NF

# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NUSRATH IQBAL, | ) |
| Plaintiff, | ) Case No. 18-cv-01947 |
| v. | ) Judge Charles R. Norgle |
| INTEGRA STAFFING SERVICES INC, MOHAMMED JAWED, EXPERT MEDICAL GROUP S.C., and AKBER KHAN, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court following a four-day bench trial[1] on Plaintiff Nusrath Iqbal's ("Plaintiff") Complaint against Defendant Dr. Akber Khan ("Dr. Kahn"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (Count IV), the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq.* (Count VIII), and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.* (Count XII). At the bench trial, Dr. Kahn was the sole remaining Defendant, as the Court had previously entered orders of default against Mohammed Jaweed ("Jaweed"), Integra Staffing Services, Inc. ("Integra"), and Expert Medical Group, S.C. ("Expert"). Dkt. 33, 40, 78. The Court enters the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52(a).

### I. FINDINGS OF FACTS

**A. Dr. Kahn's Companies and Integra**

1. Dr. Khan is the president and sole shareholder of Expert. Trial Transcript, Dkt. 124-27 ("TT"), 23:2; 385:8-9.

2. Dr. Khan is the sole physician at Expert. Id. at 392:13.

---
[1] The bench trial was held on April 23, 24, 25, and 30, 2019.

3. Dr. Khan testified that he is "the boss" at Expert, and that "if [he is] not there, the clinic is closed." Id. at 423:15-19.

4. Dr. Khan is the president and sole shareholder of Ascot Diagnostic Services, Inc. ("Ascot"). Id. at 196:4-5; 385-4-7.

5. Dr. Khan owns and operates Expert d/b/a Glo Laser and Spa ("Glo"). Id. at 411:5-8; 481:1-4.

6. Expert, Ascot, and Glo operate out of the same facility, consisting of adjoining addresses: 136 and 138B W. Higgins Road, Hoffman Estates, Illinois 60169 (the "Work Site"). Id. at 344:4-7; 382:17-20; 411:5-8.

7. Payroll for Expert, Ascot, and Glo staff was processed by Integra. Id. at 219:10-25.

8. Integra was owned and operated by Jaweed. Id. at 200:1-7.

9. Jaweed was employed by Ascot and served as the vice president of Ascot. Id. 384:18-23.

10. Jaweed was a co-signer on the bank accounts for Ascot, Expert, and Glo. Id. at 627:20-23.

11. Integra was created after Dr. Khan suggested that Jaweed create a company to provide payroll services for the staff who worked for Expert, Ascot, and Glo. Id. at 198:16-23.

12. Immediately before Integra began providing payroll services for Dr. Khan's companies, Dr. Khan was using Medpro Staffing Services for the same purpose. Id. at 391:25-392:1.

13. Integra received no monetary benefit for processing payroll for Dr. Khan's companies; Integra depended on funds from Dr. Khan's companies to meet its payroll obligations. Id. at 232:11-233:1.

14. Integra provided payroll staffing services only for Dr. Khan's companies: Ascot, Expert, and Glo. Id. at 219:9-16.

15. Jaweed testified that there was no written agreement between Integra and Dr. Khan's companies; rather, he and Dr. Khan formed an oral agreement for Integra to provide payroll services for Dr. Kahn's companies. Id. at 329:8-18.

16. Dr. Khan testified that there was a written agreement between Integra and his companies. The Court finds Dr. Khan's testimony on this point to be unreliable, as he was impeached based on a prior inconsistent statement in his answer to Plaintiff's request to produce documents, wherein Dr. Khan responded that no documents existed relating to agreements or arrangements between himself and Integra. Id. at 559-662. Further, no such written agreement was produced or offered into evidence at trial.

17. Integra operated out of the Work Site, along with Dr. Khan's companies; it did not maintain its own separate office space outside of the Work Site. Id. at 259:3-6.

18. All employees on Integra's payroll worked at the Work Site and provided services for Dr. Khan's companies.

19. Gulshan Chojar ("Chojar"), a.k.a. Gulshan Rai, was an employee of Ascot who created or prepared payroll reports for Dr. Kahn's companies for each two-week period from February 2017 through April 2017. Chojar sent each payroll report to Dr. Khan via text message or placed the reports by hand in Dr. Khan's office located at the Work Site. Id. at 33:19-22; 225:25-227:20; 461:20-464:14.

20. Dr. Khan obtained a personal monetary benefit from the work performed by the persons working at the Work Site. Id. at 484:1-5.

21. When Integra had insufficient funds to pay all of the individuals working for Dr. Khan's companies, Dr. Khan provided Jaweed with the names of the individuals who would not be paid. Dr. Khan had sole authority to determine who would not be paid when Integra had insufficient funds. Id. at 248:4-249:11.

**B. Plaintiff's Employment Circumstances**

22. Prior to the relevant time in Plaintiff's complaint, Plaintiff was employed by Ascot. Id. at 92:7-25; 93:1-15; 208:1-25; 209:1-25.

23. Pursuant to the terms of Plaintiff's oral employment agreement with Dr. Khan's companies, Plaintiff was to be paid at the rate of $22.00 per hour and was to be paid on a bi-weekly basis. Expert's Answer to Complaint and Dr. Khan's Answer to Complaint, Dkt. 14, 28 ¶¶ 13 and 14; TT at 213:22-25; 214:3-5; 14:21-25; 449-451; Plaintiff's Exhibits 000141, 000144 through 000151; Defendant's Exhibit 00001.

24. Dr. Khan participated in the negotiation of Plaintiff's employment agreement, including the determination of Plaintiff's hourly payrate, her hours per week, and her status as a W-2 employee. TT at 96:1-5; 176:17-20; 449; Plaintiff's Exhibits 000144-000145.

25. During the relevant time in Plaintiff's complaint, Plaintiff's paychecks were issued by Integra. Plaintiff's Exhibits 000144-000145.

26. Beginning in February 1, 2017 and continuing until May 6, 2017, Plaintiff performed work relating to Expert's billing, scheduling patients to see Dr. Khan, and handling rejected payments for billing related to Expert and Ascot. TT at 228:24-230:8; 609:5-610:14.

27. Plaintiff's regular working hours were Monday through Friday from 9:00 A.M. to 5:00 P.M. Id. at 29:5-13.

28. Plaintiff tracked her work hours via a computer located at the Work Site. Id. at 32:25-33:16; 83:8-20; 368: 4-12.

29. Plaintiff did not receive any payment for her work performed for Dr. Khan, Expert and Ascot from February 1, 2017 through May 6, 2017. Id. at 33:23-38:3; Plaintiff's Exhibits 000146-000151.

30. The payroll reports for Dr. Khan's companies listed the Plaintiff's name, work hours, and wages owed. Plaintiff's Exhibits 000146-000151.

31. Plaintiff worked a total of 451.5 hours for which she did not receive any compensation. TT at 37:14-38:3.

### C. Dr. Khan's Supervision and Control of Plaintiff's Work

32. Dr. Khan provided Plaintiff with login access for Expert's computer systems, including Expert's billing system. Id. at 480:8-12.

33. Expert, Ascot, and Glo utilized one computer billing system. Id. at 480:21-481:2.

34. Dr. Khan wanted Plaintiff to stay and continue working for his companies in the year 2017. Id. at 606:17-21; 607:11-16; 629:8-18.

35. In December 2016, Dr. Khan instructed Jaweed to retain Plaintiff as an employee after billing was outsourced; Dr. Khan and Jaweed also discussed the details of Plaintiff's continued employment and job responsibilities. Id. at 606:25-611:13.

36. Dr. Khan communicated with Plaintiff relating to billing for Expert. Id. at 26:14-29:1; 30:11-32:9; Plaintiff's Exhibits 000013-000132.

37. Beginning in February 2017 and continuing until May 8, 2018, Plaintiff received day-to-day tasks from Dr. Khan and her work was supervised and evaluated by Dr. Khan. TT at 25:8-29:1; 358:16-18; Plaintiff's Exhibits 000013-000132.

38. Dr. Khan was aware that Plaintiff was not being paid for the work she performed. Plaintiff's Exhibits 000146-000151; Defendant's Exhibits 1; TT 38:8-19.

39. Dr. Khan promised Plaintiff that she would be paid for the work she was performing. TT at 38:8-19.

## II. CONCLUSIONS OF LAW

Plaintiff claims that Dr. Khan is individually liable for her unpaid wages under the FLSA, IMWL, and IWPCA. For the following reasons, the Court agrees.

4

## A. Dr. Khan's Liability Under the FLSA and IMWL

The FLSA requires "[e]very employer" to pay "his employees" a minimum wage of $7.25 per hour. 29 U.S.C. § 206(a)(1)(c). Section 203(e)(1) simply defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Section 203(g) broadly defines "employ" as "to suffer or permit to work." 29 U.S.C. § 203(g). Thus, to qualify as an employee for purposes of the FLSA, one must perform "work" for an "employer." "Employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Under the FLSA, the plaintiff bears the burden of establishing that he or she performed work for an employer and is therefore entitled to compensation. Melton v. Tippecanoe Cty., 838 F.3d 814, 818 (7th Cir. 2016).

"The Supreme Court has instructed the courts to construe the terms 'employee' and 'employer' expansively under the FLSA," Vanskike v. Peters, 974 F.2d 806, 807 (7th Cir. 1992) (citing Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992)). But the definition of "employee" "does have its limits." Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 295 (1985). "Because status as an 'employee' for purposes of the FLSA depends on the totality of circumstances rather than on any technical label, courts must examine the 'economic reality' of the working relationship" between the alleged employee and the alleged employer to decide whether Congress intended the FLSA to apply to that particular relationship. Vanskike, 974 F.2d at 808. "The FLSA considers employees those 'who as a matter of economic reality are dependent upon the business to which they render service.'" Simpkins v. DuPage Hous. Auth., 893 F.3d 962, 964 (7th Cir. 2018) (quoting Sec. of Lab., U.S. Dept. of Lab. v. Lauritzen, 835 F.2d 1529, 1534 (7th Cir. 1987)). Relevant factors include whether the purported employer: "(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions

of employment; (3) determined the rate and method of payment; and (4) maintained employment records." Deschepper v. Midwest Wine and Spirits, Inc., 84 F. Supp. 3d 767, 778 (N.D. Ill. 2015) (internal quotation omitted). The Seventh Circuit, however, has instructed that "no criterion is by itself, or by its absence, dispositive or controlling" in the economic reality analysis. Simpkins, 893 F.3d at 964 (quoting Lauritzen, 835 F.2d at 1534). The economic reality analysis also applies to Plaintiff's claim under the IMWL. See Ladegaard v. Hard Rock Concrete Cutters, Inc., 00 C 5755, 2004 WL 1882449, at *4 (N.D. Ill. Aug. 18, 2004) ("[T]he same analysis generally applies to both the FLSA and IMWL.").

Here, the Court finds that under the economic reality analysis, Dr. Khan was Plaintiff's employer. Plaintiff established at trial that during the time relevant to her Complaint, February 1, 2017 through May 6, 2017, she performed work relating to Expert's billing, scheduling patients to see Dr. Khan, and handling rejected payments for billing related to Expert and Ascot. Although Plaintiff's paychecks were issued by Integra, the only purpose Integra served was to process payroll for Dr. Khan's companies. In other words, Integra had no other "clients" other than Dr. Khan's companies. Moreover, Integra received no financial benefit from processing payroll for Dr. Khan's companies and relied completely on payments from Dr. Khan's companies to meet its payroll obligations. Dr. Khan frequently issued these payments himself after receiving payroll reports from Integra. Dr. Khan also had sole authority to determine who would not be paid when Integra had insufficient funds meet its payroll obligations. Taking all these facts together, Dr. Khan had nearly complete control over Plaintiff's paychecks, even though her paychecks were physically issued by Integra.

Plaintiff further established that she was retained to perform certain billing services for Expert and Ascot at the direction of Dr. Khan after Ascot's billing services were outsourced. Thus, Dr. Khan had the authority to determine the fate of Plaintiff's employment. Plaintiff also received day-to-day tasks from Dr. Khan and her work was supervised and evaluated by Dr. Khan. Finally, Dr. Khan was

the only physician at Expert and, in his own words, "if [he is] not there, the clinic is closed." TT at 423:15-19.

Putting aside Plaintiff's concerns about the well-being of patients, her major activities on a day-to-day basis were to advance the economic interest of Dr. Khan. Moreover, given the very substantial amount of control that Dr. Khan had over Plaintiff's employment and Plaintiff's dependence upon Dr. Khan—being the only physician at Expert and the sole shareholder/president of Expert and Ascot—the Court concludes that Dr. Khan was Plaintiff's employer under the FLSA and IMWL. Accordingly, the Court finds in favor of Plaintiff and against Dr. Khan on Counts Count IV and XII of Plaintiff's Complaint.

## B. Dr. Khan's Liability Under the IWPCA

Under the IWPCA, "[e]very employer shall be required, at least semi-monthly, to pay every employee all wages earned during the semi-monthly pay period." 820 ILCS 115/3. To prevail on an IWPCA claim, a plaintiff must first show that she had a valid contract or employment agreement. Hess v. Kanoski & Associates, 668 F.3d 446, 452 (7th Cir. 2012). "Illinois courts have explained that an agreement under the IWPCA is 'broader than a contract.'" Id. (quoting Zabinsky v. Gelber Group, Inc., 807 N.E.2d 666, 671 (Ill. App. 1st Dist. 2004)). The IWPCA "requires only a manifestation of mutual assent on the part of two or more persons; parties may enter into an 'agreement' without the formalities and accompanying legal protections of a contract." Zabinsky, 807 N.E.2d at 671. Further, the Illinois Supreme Court has held that "[l]iability under the [IWPCA] can be imposed upon employers, as that term is traditionally understood, and upon any officers of a corporation or agents of an employer who knowingly permitted the [IWPCA] violation. And because the [IWPCA], unlike the FLSA, clearly spells out who may be held liable and under what

7

circumstances, there is no need for application of the 'economic realities' test." Andrews v. Kowa Printing Corp., 838 N.E.2d 894, 901 (Ill. 2005).

Here, Plaintiff has established that she had an oral employment agreement with Dr. Khan's companies, wherein Plaintiff was to be paid at the rate of $22.00 per hour on a bi-weekly basis. Plaintiff also established that she was not paid for 451.5 hours of wages earned from February 1, 2017 through May 6, 2017. Moreover, Plaintiff established that Dr. Khan was aware that she was not being paid for her work and promised that she would be paid in the future. Thus, Dr. Khan is liable for the IWPCA violation because he knowingly permitted the violation. See Andrews, 838 N.E.2d at 901. Accordingly, the Court finds in favor of Plaintiff and against Dr. Khan on Count VIII of Plaintiff's Complaint.

## C. Damages

Plaintiff established at trial that Dr. Khan is liable under the FLSA, IMWL, and IWPCA for 451.5 hours of unpaid wages that Plaintiff earned from February 1, 2017 through May 6, 2017. Plaintiff seeks to collect her full wages, at $22.00 per hour, along with 3.27 overtime hours at $33 per hour[2], under the IWPCA, as opposed to either federal or state minimum wage under the FLSA or IMWL. Plaintiff further seeks statutory interest of 2% per month for each pay period in which she was not paid under the IWPCA. Section 14(a) of the IWPCA provides that:

> Any employee not timely paid wages, final compensation, or wage supplements by his or her employer as required by this Act shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, the amount of any such underpayments and damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. In a civil action, such employee shall also recover costs and all reasonable attorney's fees.

---

[2] Under 820 ILCS 105/4a "no employer shall employ any of his employees for a workweek of more than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than 1 1/2 times the regular rate at which he is employed."

8

820 ILCS 115/14(a).

Plaintiff has provided the following damages calculation, including unpaid wages, overtime, and statutory interest under the IWPCA:

1. February 1, 2017 through February 15, 2017: 83.27 hrs
    a. 80 hrs Unpaid Wages at $22.00/hr = $1,760.00
    b. 3.27 hrs Overtime at $33/hr = $107.91
    c. 2% Monthly Interest = $37.36/mo

2. February 16, 2017 through February 28, 2017: 69.44 hrs
    a. Unpaid Wages at $22.00/hr = $1,527.68
    b. 2% Monthly Interest = $30.55/mo

3. March 1, 2017 through March 15, 2017: 73.77 hrs
    a. Unpaid Wages at $22.00/hr = $1,622.94
    b. 2% Monthly Interest = $32.46/mo

4. March 16, 2017 through March 31, 2017: 79.5 hrs
    a. Claimed Wages at $22.00/hr = $1,749.00
    b. 2% Monthly Interest = $34.98/mo

5. April 1, 2017 through April 15, 2017: 48.51 hrs
    a. Unpaid Wages at $22.00/hr = $1,067.22
    b. 2% Monthly Interest = $21.34/mo

6. April 16, 2017 through April 30, 2017: 57.02 hrs
    a. Unpaid Wages at $22.00/hr = $1,254.44
    b. 2% Monthly Interest = $25.08/mo

7. May 1, 2017 through May 15, 2017: 40 hrs
    a. Unpaid Wages at $22.00/hr = $880.00
    b. 2% Monthly Interest = $17.60/mo

**TOTALS**
Total Unpaid Wages at $22.00/hr and Overtime at $33.00/hr = $9,969.19
Total Monthly Interest as of July 2019 = $5,369.28
- $67.91 in Interest on Unpaid February 2017 Wages x 28 months = $1,901.48
- $67.44 in Interest on Unpaid March 2017 Wages x 27 months = $1,820.88
- $46.42 in Interest on Unpaid April 2017 Wages x 26 months = $1,206.92
- $17.60 in Interest on Unpaid May 2017 Wages x 25 months = $440.00

**Total Damages with Interest = $15,338.47 (as of July 2019, with interest accruing at $199.37 per month)**

9

Plaintiff's Proposed Findings of Fact and Conclusions of Law, Dkt. 118, Ex. 1.

Based on the foregoing, the Court awards Plaintiff $15,338.47 in damages. Additionally, Plaintiff is entitled to reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216 (b), 820 ILCS 105/12(a), and 820 ILCS 115/14(a). Plaintiff shall file a bill of costs detailing attorneys' fees and all other recoverable costs on or before August 23, 2019. Defendant may file his objection to Plaintiff's bill of costs on or before September 13, 2019.

### III. CONCLUSION

The Court finds in favor of Plaintiff and against Dr. Khan on Counts IV, VIII, and XII of Plaintiff's Complaint. Plaintiff is awarded $15,338.47 in damages. Additionally, Plaintiff is entitled to reasonable attorneys' fees and costs. Plaintiff shall file a bill of costs detailing attorneys' fees and all other recoverable costs on or before August 23, 2019. Defendant may file his objection to Plaintiff's bill of costs on or before September 13, 2019.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: July 24, 2019